## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA                     CRIMINAL NO. 18-249

:

      **V.**

:

DONTEZ STEWART


## DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ALL EVIDENCE OF THE MURDER OF ROBERT JOHNSON


### INTRODUCTION

In the Government's Motion *In Limine* to Admit Social Media Posts (Document 352)("Government's *MIL*"), the Government argues that they should be permitted to introduce highly inflammatory evidence of the murder of Robert Johnson ("Johnson"), allegedly committed by defendant Dontez Stewart ("Stewart") at the behest of Abdul West ("West"). Despite the fact that the murder of Johnson is not charged in the Second Superseding Indictment, the Government nevertheless argues that this evidence is admissible because it is "intrinsic to the charged offense."  In the alternative, the Government argues that this evidence is admissible under Federal Rule of Criminal Procedure 404(b) ("Rule 404(b)").  **All** evidence regarding the murder of Johnson, not limited to just the evidence proffered in the Government's *MIL*, must be precluded because it is neither "intrinsic to the charged offense," or admissible under Rule 404(b). Accordingly, that evidence must be barred from trial.


### FACTS

1

On August 9, 2019, the Government filed its' Motion *In Limine* to Admit social media

posts. The Government put the defense on notice that it seeks to introduce evidence of the

murder of Johnson.   By way of background, on October 14, 2017, Johnson was shot

multiple times at the 4000 block of Benner Street.  Johnson was transported to Aria

Hospital where he died as a result of his wounds.  On October 19, 2017, Stewart met with a

confidential informant and during a drug transaction was recorded saying that "he just

caught a "jawn," and that he used a "9" to deliver "14 rounds to the chest' around Frankford

and Benner four nights ago, maybe five nights ago'" and that the methamphetamine he just

sold him was "off a nigga I smoked.[1]" On November 3, 2017, Stewart was arrested with a

9mm handgun at 2139 Granite Street.    As a result, Stewart was charged with Violations of

the Uniform Firearms Act ("VUFA Case"). Subsequent ballistics testing on the bullets

removed from Johnson's body, as well as the fired cartage casings at the crime scene,

revealed that the handgun in Stewart's possession was the same gun used to kill Johnson.

After conducting an investigation, Philadelphia Homicide Detectives arrested Stewart on

July 3, 2018, and charged Stewart with the murder of Johnson ("State Murder Case").

Stewart was *Mirandized,* declined to give a statement and requested an attorney. On July

26, 2018, Stewart was transported from CFCF to the Federal Building at 600 Arch Street.

Despite the fact Stewart had previously refused to give a statement, requested an attorney

when read his *Miranda* warnings, and was subsequently appointed Lee Mandell, Esq., in the

State Murder Case, Special Agent Simpson, Task Force Officer Stewart and Philadelphia

Homicide Detective Bamberski proceeded to *Mirandize* Stewart and question him

---

[1] The refenced drug transaction is charged in Count 8 of the Second Superseding Indictment.

2

regarding the underlying facts in the State Murder Case.  Stewart then waived his *Miranda* warnings and made numerous incriminating statements concerning not only the State Murder Case, but drug transactions with members of the DTO.  That statement was the subject of a Motion to Suppress.  After briefs and a suppression hearing the Government indicated they would not seek to use that statement in any way and the Motion to Suppress was denied as moot. Both the VUFA Case and the State Murder Case have been listed for a consolidated trial on September 16, 2019, in the Criminal Justice Center.

West subsequently wrote a rap video to post on social media - the lyrics to that posting were found on one of West's phones seized during the course of the investigation, and was dated October 18, 2017, four day after the murder of Robert Johnson.  Specifically, those lyrics were as follows;

I'm Purple hearted I done been to war if u kill 1 of mine I kill 10 of urs Ring ur bell den I riot pump thru door Den I try stomp ur fucking head thru da floor Told my brother if u spit on him get brutal wit him My only problem is deciding what shooter to send It's dat da same war u using again Don't give uh fuck if dead u shoot again I watched Instagram I Seen what u said homie Now Ima fill ur whole page with ur dead homies I'll have da whole city scared stand near homie **I call Tez and tell him bring dat nigga head to me** He on da gram murder I was no good Now I declare Marshall law on ur whole hood I heard ur corney Mixtape did it good wood My plug just thru on da look It's never uh opp only love hurt me Can't wait to skeem touch cause he blood thirsty If I give em an address he uh come early Den he open up ur head like it was sugar We don't value life if u ain't on da team Our last Homicide it was on da screen Get uh nigga touched so he hit quarantine Stab em with both hands like wolverines Made my first 50 grand back in 08 Whole plate of snow flakes on proba Hold wait it's no bake just go straight And fuck da city Get U banned from da whole state

(emphasis added).

For the reasons that follow, all evidence of the murder of Johnson, not solely limited to the proffered evidence in the Government's *MIL*, must be precluded from trial.

**ARGUMENT**

3

**A. Evidence of Johnson's murder is not "intrinsic evidence" and must be excluded.**

In the instant case, evidence of Johnson's murder is not admissible as "intrinsic evidence." The Government argues that the murder of Johnson helps to prove the conspiracy count because "…the defendants used threats and violence to facilitate their drug trafficking."  Government's *MIL* at 5. Moreover, paragraph 13 in the Second Superseding Indictment alleges that;

Defendants WEST, BOYER and GADSON and other members of the DTO wrote, produced and distributed songs via the Internet and social media which lyrics reflected their drug trafficking activities and threats of violence to others to protect and maintain their drug trafficking activities and prevent witnesses from cooperating with law enforcement."

Based upon these general averments, the Government now seeks to introduce evidence of Johnson's murder as "intrinsic evidence." All evidence regarding the murder of Johnson must be excluded because it is not "intrinsic evidence."

The Government relies upon *United States v Green*, 617 F3d 233 (3d Cir, 2011), to admit evidence of Johnson's murder as "intrinsic to the charged offenses." The Government's reliance on *Green* is misplaced.  The Court in *Green*, made clear that the "intrinsic" label is only reserved only "for two narrow categories of evidence." 617 F.3d 233, 248 (3d Cir. 2010)*. "**First**, evidence is intrinsic if it "directly proves" the charged offense." *Id.* (citations omitted) (emphasis added). "**Second**, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" *Id.* at 249 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)) (emphasis added).  Evidence regarding the murder of Johnson does not fall within either two narrow categories of admissible "intrinsic evidence" enumerated in *Green* and must be

4

excluded from trial.

The facts of Green reveal that Green was arrested in New Jersey on state-law drug charges. This arrest came about in part through the efforts of an undercover officer identified in the record as "A.G.," "Gus," and "Gussy." *Id* at 235.

Three months later, Green and an acquaintance, Jacqueline Stahl, were in a vehicle together when they drove past A.G.'s home. Green told Stahl that he was going to blow up A.G. as retaliation for getting him arrested. *Id.*  He also stated his desire to purchase dynamite and blasting caps, as well as cocaine. Stahl contacted law enforcement, reported what Green had said, and agreed to act as an informant.  *Id.* In the weeks that followed, Stahl, acting at the direction of the FBI, surreptitiously recorded a series of conversations with Green about the possibility of acquiring dynamite and cocaine through "Frankie," Stahl's boyfriend from Florida. *Id* at 235-236.

Eventually, the sale was scheduled for August 3 and although the agreed upon price was $5,000, Green brought along $3,100 plus the title to a vehicle he intended to offer as collateral in the transaction. *Id.* at 236. Stahl picked up Green at his apartment and drove him to a motel, where they met "Mario," an FBI agent posing as Frankie's friend. *Id.*  After initial conversations inside the motel, Mario, Green, and Stahl went to Mario's vehicle and Mario opened the trunk and showed Green one bag containing dynamite and another containing cocaine. Green twice said, "alright," then went to retrieve Stahl's vehicle. As he walked to the car, he noticed police officers sitting in several of the vehicles in the parking lot and decided to abandon the deal. He got into Stahl's car and sped away. *Id* at 237.

5

Green was arrested four days later. He was indicted on one count of attempted possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 21 U.S.C. § 846. Green was not charged in connection with his attempts to procure dynamite or his threat to kill A.G. *Id.*

At trial the Government filed a motion *in limine* to admit recorded and testimonial evidence of Green's attempts to purchase dynamite in order to kill A.G. The evidence was admitted and Green was convicted.  On appeal, Green argued that the motive for buying the dynamite – to kill AG – was not intrinsic evidence and should not have been admitted.

The *Green* Court went on to **reject** the Government's position, holding that that Green's threat to kill A.G. with dynamite was not intrinsic evidence because it did not first, directly prove that Green attempted to possess cocaine with intent to distribute and second, did not in any meaningful way facilitate his attempt to procure cocaine through "Frankie" and "Mario"—the only crime with which he was charged[2]. *Id* at 249.

While uncharged acts of violence can be admitted in certain circumstances as intrinsic evidence to prove a conspiracy, that is not the case here.  In *United States v. Gibbs*, 190 F3d 188 (3d Cir. 2015), the court held that under the specific facts the case, acts of violence were properly admitted as direct proof of a drug conspiracy. *Gibbs* at 218.  *Gibbs* is not on point.  In *Gibbs*, the Government introduced evidence at trial about the use of violence in the conspiracy. Specifically, it introduced testimony that Gibbs, who suspected that Maurice Grannum had attempted to kidnap him, sent Earl Packer Hunte and Derrick Parks to shoot

---

[2] The *Green* Court, however, conducted a further Rule 404(b) analysis and held the threat to kill A.G. was admissible under that Rule.

Grannum, and that once Gibbs suspected that Sydnor had shot him, he sent Earl Brown and Frank Fluellen on a mission to kill Sydnor. *Id*. at 217. Two police officers also testified that the attempt to shoot Grannum did occur on the date and time Gibbs and Parks had agreed upon. *Id*.

Under these specific set of facts, the *Gibbs* Court held that since the Government introduced evidence of Gibbs's use of violence to further the illegal objectives of the cocaine conspiracy by removing threats to himself (since threats to Gibbs meant threats to the trafficking enterprise), the District Court did not abuse its discretion in permitting this evidence to come in. *Id* at 218.

This case is a far cry from *Gibbs*.  In *Gibbs*, the acts of violence were a direct result of Gibbs retaliating against rivals that meant to kidnap and kill him. Here, the Government makes no such specific averments, rather only a sweeping allegation that West's postings regarding the murder of Johnson was done to "protect and maintain their drug trafficking activities." Government's *MIL* at 5. The Government fails to specifically articulate **why** this highly inflammatory evidence proves the conspiracy charge by protecting or maintaining drug trafficking activities of the DTO. Unlike *Gibbs*, the Government's *MIL* cites no evidence of a specific motive to kill Johnson or other specific facts that show the murder was done in furtherance of the conspiracy.  The vague assertions in the Government's *MIL* fall short of showing how evidence of Johnson's murder proves the conspiracy or any other of the charged offenses.  Thus, the Government's proffered evidence does not fall within the first narrow exception articulated in *Green*.

Likewise, evidence of the murder of Johnson does not meet the second exception in *Green* which recognizes that uncharged acts performed contemporaneously with the

7

charged crime may be termed intrinsic if they facilitate the commission of the charged

crime.  There was no other charged crime that was being performed contemporaneously

when the murder of Johnson occurred. Indeed, the Government does not even attempt to

make an argument that the murder of Johnson falls within this second narrow exception.

Accordingly, the Government fails to show that evidence of Johnson's murder is admissible

as "intrinsic evidence."


### B.  Evidence of Johnson's murder is not admissible under Rule 404(b)[3]

Federal Rule of Evidence 404 provides, in relevant part:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is
not admissible to prove the character of a person in order to show action in
conformity therewith. It may, however, be admissible for other purposes,
such as proof of motive, opportunity, intent, preparation, plan, knowledge,
identity or absence of mistake or accident...

The purpose of Rule 404(b) is to protect an accused's constitutional right to a fair

trial from the tendency that bad character evidence will weigh too much with the jury and

to so over-persuade them as to prejudge one with a bad general record and deny him a fair

opportunity to defend against a particular charge.  *United States v. Sampson*, 980 F.2d 883,

886 (3d Cir.1992) (*quoting Michelson v. United States*, 335 U.S. 469, 475-76 (1948)).

The Third Circuit has adopted the United States Supreme Court's four-prong test to

determine whether evidence of the other crimes, wrongs or acts allegedly committed by a

charged defendant are admissible under the Federal Rule of Evidence 404(b). *See*,

---

[3] Stewart also joins the Motion *IN Limine* of Defendant Amir Boyer To Bar Irrelevant and Unduly Prejudicial
Evidence at Trial (Docket number 155).

*Huddleston v. United States*, 485 U.S. 681 (1988); *United States v. Scarfo*, 850 F.2d 1015 (3d Cir. 1988), *cert. denied*, 488 U.S. 910 (1988). According to the *Huddleston* test, evidence of prior bad acts (1) must have a proper purpose under Rule 404(b); (2) it must be relevant under Federal Rule of Evidence 402; (3) its probative value must outweigh its potential to unfairly prejudice the defendant under Federal Rule of Evidence 403; and, (4) the court must instruct the jury to consider the prior bad acts evidence for its limited proper purpose only. *Scarfo*, 850 F.2d at 1019 (*citing Huddleston*, 485 U.S. at 691-92).

The Third Circuit has emphasized that Rule 404(b) generally prohibits the admission into evidence of extrinsic acts intended to prove a defendant's propensity for crime or to suggest to the jury unfavorable inferences reflecting on his character. *Scarfo*, 850 F.2d at 1018. Furthermore, Rule 404(b) dictates that other crimes evidence may be used only to prove a limited number of criminal elements. The Rule specifically states that other crimes evidence may be used to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

*First*, evidence of Johnson's murder does not have a proper purpose under Rule 404(b). The Government argues that the reason that evidence of Johnson's murder has a proper purpose is because it is "**necessary background information, to show an ongoing relationship, and to help the jury understand the parties' role in the scheme**." Government's *MIL* at 10 (emphasis added).  While the Third Circuit has recognized that prior bad acts evidence may also be used to provide background information concerning the defendant and the perpetration of the offense, *Scarfo* at 1019.,

9

such evidence in this case is wholly unnecessary and is substantially outweighed by its'
unfairly prejudicial impact upon the trier of fact.

Moreover, the need for the proffered evidence is to be considered in view of the
contested issues and other evidence available to the prosecution, and the strength of the
evidence in proving the issue. *United States v. Sriyuth*, 98 F.3d at 739, 748. Barring
evidence of Johnson's murder in no way hampers the Government from proving an
"ongoing relationship among the parties." Nor does barring that evidence hamper the
Government in the least in attempting to prove the conspiracy count or the individual
narcotics and gun transactions allegedly committed by Stewart. In fact, the Government
has access to law enforcement witnesses, surveillance, testimony of informants, recordings
and a host of other evidence to attempt to establish all the material elements of the charged
counts. There is simply no **genuine** need on the part of the Government to introduce
evidence concerning the murder of Johnson, other than to unfairly prejudice Stewart and
inflame the passions of the jury.

*Second*, evidence of prior bad acts must be logically relevant, under Rules 404(b)
and 402, to any issue other than the defendant's propensity to commit the crime. *United
States v. Palma-Ruedes*, 121 F.3d 841, 851 (3d Cir. 1997). Consequently, before evidence of
prior bad acts will be admitted, the Government is required to articulate clearly how that
evidence fits into a chain of logical inferences, no link of which can be the inference that
because the defendant committed offenses before, he therefore is more likely to have
committed this one. *United States v. Morley*, 199 F.3d 129, 137 (3d Cir. 1994) (quoting
*Sampson*, 980 F.2d at 886-87. Prior bad acts are not inherently relevant to the proper

10

purposes articulated under Rule 404(b). *Sampson*, 980 F.2d at 888. Evidence is relevant where there is a relationship between the evidence and a material fact at issue which must be demonstrated by reasonable inferences that make a material fact more probable or less probable than it would be without the evidence. *Id*.; *see also* Federal Rule of Evidence 401.

Here, Stewart concedes that the evidence of Johnson's murder may have marginal relevance to show a relationship among the parties. That marginal relevance is substantially outweighed by the its propensity to unfairly prejudice Stewart, confuse the ultimate issues in controversy or otherwise mislead the jury, or impact other trial concerns as seen below.

*Third*, Federal Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by its propensity to unfairly prejudice the defendant, confuse the ultimate issues in controversy or otherwise mislead the jury, or impact other trial concerns. *See, United States v. Van Horn*, 277 F.3d 48, 57 (1st Cir. 2002); *United States v. Repak*, 852 F3d 230 (3d Cir, 2017);*United States v. Brugman*, 364 F.3d 613, 620 (5th Cir. 2004); *United States v. Joseph*, 310 F.3d 975, 978 (7th Cir. 2002); *United States v. Mejia-Uribe*, 75 F.3d 395 (8th Cir.1996), cert. denied, 519 U.S. 855 (1996); *United States v. Spillone*, 879 F.2d 514 (9th Cir.1989), cert. denied, 498 U.S. 878 (1990); *United States v. Pollock*, 926 F.2d 1044 (11th Cir. 1991), cert. denied, 502 U.S. 985 (1991). The unfair prejudicial impact to Stewart regarding evidence the murder of Johnson substantially outweighs any possible probative value.

11

Indeed, proposed evidence of prior bad acts must possess probative value that is not substantially outweighed by unfair prejudice. See, e.g., *United States v. Mastrangelo*, 172 F.3d 288, 294-95 (3d Cir. 1999) (*citing Huddleston*, 485 U.S. at 691-92). Unfair prejudice arises when concededly relevant evidence... lure[s] the factfinder into declaring guilt on a ground different from proof specific to the offense charged.  *United States v. Ramos*, 971 F.Supp. 186, 194 (E.D.Pa. 1997) (*quoting Old Chief v. United States*, 519 U.S. 172, 180 (1997)), aff'd, 151 F.3d 1027 (3d Cir. 1998). In determining whether the danger of unfair prejudice substantially outweighs the probative value of an item of evidence, "we must assess the genuine need for the challenged evidence and balance that necessity against the risk that the information will influence the jury to convict on improper grounds."  *United States v. Sriyuth*, 98 F.3d 739, 747-48 (3d Cir. 1996), cert. denied, 519 U.S. 1141 (1997) (*quoting Scarfo*, 850 F.2d at 1019).

Evidence of Johnson's murder will inflame the passions of the jury and cause them to convict Stewart based upon animus toward Stewart. This is exactly the type of unfair prejudice Rule 403 is designed to prevent.  In fact, unfairly prejudicial evidence is that having "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief* at 180. (citation and internal quotation marks omitted). Here, admitting evidence of a murder, not charged in the Indictment, invites the jury to convict Stewart on an improper emotional basis.

Furthermore, although Stewart is charged in state court with the murder of Johnson, he has not been convicted of that crime.  The Government chose not to charge Stewart with the murder of Johnson in Federal Court. They can't have it both ways. Indeed, if the Government is allowed to introduce evidence of Johnson's murder, this case would literally become a trial

12

within a trial.  In other words, Stewart would be forced to challenge the Government's evidence by arguing that he did not commit the murder of Johnson.  The issue of whether or not Stewart committed the murder of Johnson would become a central focus of the trial. This is **exactly** the type of evidence proscribed by Rule 404(b) because introduction of evidence regarding the murder of Johnson would only serve to confuse the ultimate issues in controversy, or otherwise mislead the jury, or impact other trial concerns.

*Finally*, a curative instruction in this case asking the jury to disregard the murder of Johnson and use that evidence for its so-called limited purpose, is pure legal fiction - especially when the evidence proffered lacks a proper purpose, is inflammatory, unduly prejudicial, will confuse the ultimate issues in controversy or otherwise mislead the jury, and impact other trial concerns. Accordingly, there is no basis to believe that the jury will cull the proper inferences and material facts from the evidence and properly judge Stewart according to the charges as they are presented in the indictment.


By: <u>Trevan Borum, Esq</u>.
 /s/ Trevan Borum, Esq.
 Borum, Burke & DiDonato, LLC
 1500 JFK Blvd – Suite 900
 Philadelphia, PA 19102

13